IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOVON WARREN, | ) CASE NO. 1:14-CV-1006 |
| | ) |
| Plaintiff, | ) JUDGE DONALD C. NUGENT |
| | ) |
| vs. | ) |
| | ) MEMORANDUM AND OPINION |
| PTL. MICHAEL TANKERSLEY, et al. | ) |
| | ) |
| Defendants. | ) |

This matter comes before the Court on Motions for Summary Judgment filed by Defendants Michael Tankersley (hereafter "Officer Tankersley") and Officer Amy Carraway (hereafter "Officer Carraway") (ECF #28) and Defendant City of Cleveland (ECF #29) filed pursuant to Fed.R.Civ.P. 56. Plaintiff, Jovon Warren (hereafter "Plaintiff") filed an Opposition Brief to each Motion for Summary Judgment (ECF #31 and 33) and all Defendants filed their respective Reply Briefs (ECF #35 and 36). The issues are fully briefed and ripe for review.

For the reasons set forth below, Summary Judgment for Officer Carraway and the City of Cleveland is granted on all Counts, and granted in part and denied in part for Officer Tankersley.

PROCEDURAL HISTORY

Plaintiff filed his First Amended Complaint[1] (ECF #16) on October 28, 2014 against the Defendants, alleging violations of his Constitutional rights, various state law claims and physical and emotional injuries stemming from his arrest on May 9, 2012. Defendants Tankersely and

---

[1] Plaintiff's original Complaint was filed on May 8, 2014.

Carraway were employed as police officers with the City of Cleveland at the time of Plaintiff's arrest.[2] Specifically, the remaining claims against each Defendant are:

- City of Cleveland - false arrest and Monell liability (failure to discipline, train, supervise or correct the "pattern of unconstitutional conduct" engaged in by Defendants Tankersley and Carraway);

- Officer Carraway - false arrest, failure to intervene[3] and negligence; and

- Officer Tankersley - excessive force, false arrest, negligence and First Amendment retaliation.[4]

Plaintiff seeks compensatory and punitive damages against Defendants. (ECF #16, p. 14). All Defendants timely filed their Answers on November 12, 2014 denying the allegations in their entirety. (ECF #19 and 20).

## FACTUAL HISTORY[5]

At approximately 4:00 p.m. on May 9, 2012, Officers Tankersley and Carraway responded to a police dispatch indicating that a tall male "with green hat has gun on waist" near the area of 3135 W. 52d Street, Cleveland, Ohio. (ECF #28-1). At this time, Plaintiff was walking with three

---

[2] Officer Tankersely resigned from the Cleveland Police Department in 2013. (ECF #31-1, p. 37.)

[3] Although not specifically plead in the Amended Complaint, see Section II.(B)(3) for this Court's reasons for addressing this claim.

[4] Plaintiff indicated in his Brief in Opposition (ECF #31, p.19) that he does not oppose Defendant's Motion for Summary Judgment on Counts Three (Excessive Force-Substantive Due Process) and Six (Intentional Infliction of Emotional Distress), and therefore, Defendants are entitled to judgment as a matter of law on these counts.

[5] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

males along Clark Avenue in the area of W. 52d Street. (ECF #16, ¶8). Plaintiff testified at his deposition that he was wearing a green hat at this time and matched the description of the suspect. (ECF #27, p. 107 and 98).

The Officers stopped the Plaintiff and told him that he "fit the description of a guy" that was possibly involved in a robbery. (Id. at p. 97). Plaintiff testified that he presented the Officers with his identification when asked, and then was placed "in the back of the police car with no handcuffs."[6] (Id.) Plaintiff further testified that while in the car, he heard the dispatcher state that they were looking for a person with a gun described as "a black male weighing 160 pounds wearing a green hat" and admitted that he matched the description of the suspect. (Id. at p. 107.) When it was determined that Plaintiff was not the suspect and had no outstanding warrants, the Plaintiff's identification was returned to him and he was released. (Id. at p. 98.)

Plaintiff testified that he got out of the back of the police car and asked Officer Tankersley for his name and badge number. (Id. at p. 109.) Plaintiff further testified that Officer Tankersley provided his name, but not the badge number. (Id. at p. 111). Plaintiff did not leave the scene despite being told to do so by Officer Tankersley. (Id.) Plaintiff alleges that Officer Tankersley then grabbed his jacket, punched him in the jaw and moved his right arm in a painful manner while trying to handcuff him. (Id. at 98 and 118). It has not been alleged that Officer Carraway had any physical contact with Plaintiff before or during the incident.

Officer Tankersley then placed Plaintiff under arrest for disorderly conduct and Plaintiff was charged with having violated Cleveland Codified Ordinance ("CCO") 605.03(a)(3) which

---

[6] This testimony contradicts the allegations in Paragraph 10 of the Amended Complaint (ECF #16) that claims Plaintiff "was handcuffed and put in the back of the car."

states: "no person shall recklessly cause inconvenience, annoyance or alarm to another by... insulting, taunting, or challenging another under circumstances in which such conduct is likely to provoke a violent response." (ECF #28-2). The citation also indicated that Plaintiff was hindering movement on the sidewalk in violation of CCO 605.03(a)(4).[7] (*Id.*) Plaintiff was booked into jail and released approximately three hours later. (ECF #27, p. 121). Plaintiff plead not guilty to the charge and the case was dismissed for failure to prosecute on June 7, 2012.[8] (ECF #35-1).

The day after the incident, May 10, 2012, Plaintiff went to Lakewood Hospital's emergency room complaining of pain in his right shoulder. (ECF #31-3, ¶10). Plaintiff had arthroscopic surgery on the right shoulder on October 3, 2012. (*Id.*)

Officer Tankersley has testified that he has no recollection of the dispatch information, the arrest or any idea as to how Plaintiff sustained the alleged injuries on May 9, 2012. (ECF #31-1, pp. 34-36). Carraway similarly testified that she has no recollection of the events involving Plaintiff's arrest on May 9, 2012. (ECF #31-2, pp. 41-44).

## LAW AND ANALYSIS

I.  STANDARD OF REVIEW

Defendants in this case have moved under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") for summary judgment on all of Plaintiff's federal and state claims. Plaintiff has filed

---

[7] It does not appear from the record that Plaintiff was actually charged with this violation, as it is merely noted on the ticket and Plaintiff's criminal case proceeded on the disorderly charge only. See ECF #35-1.

[8] This Court takes issue with Plaintiff's recurring erroneous statement that "it is undisputed that Warren was found not guilty," as his guilt or innocence was not adjudicated (See, e.g., ECF #31, p. 1).

Opposition Briefs to each of Defendants' Motions. In ruling on the Motion, this Court views the record in a light most favorable to the non-movant in accordance with Rule 56.

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir.2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1985). The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

II. ANALYSIS

Before this Court addresses the claims presented against each Defendant, it is important to note that Plaintiff has indicated that he does not oppose Defendants' Motions for Summary Judgment on the substantive due process claim (Count Three) and the intentional infliction of emotional distress claims (Count Six). (ECF #31, p. 19). Therefore, summary judgment is granted to Officer Tankersley on Count Three and to Officer Tankersley, Officer Carraway and the City of Cleveland on Count Six.

A. Defendant City of Cleveland's Motion for Summary Judgment

The claim against the City of Cleveland is for what Plaintiff captions "Monell Liability" (Fifth Cause of Action), claiming that the City of Cleveland "failed to adequately discipline, train, supervise or correct the pattern of unconstitutional conduct" of Tankersely and Officer Carraway. (ECF #16, ¶41).[9] The City of Cleveland moves for summary judgment arguing that it is entitled to judgment as a matter of law pursuant to 42 U.S.C. §1983. (ECF #29).

42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[9] Although the Amended Complaint appears to include the City of Cleveland in Count Two, no specific evidence or argument has been set forth by Plaintiff against the City in pleadings, and therefore, that claim will not be addressed herein.

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To prove a claim under §1983, a plaintiff must demonstrate "that he was deprived of a right secured by the Constitution or laws of the United States, and that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

The Supreme Court in the *Monell* case established the rule that a municipality cannot be held vicariously liable for the tortious acts of its employees. *Monell v. Dept. of Soc. Services*, 436 U.S. 658 (1978). Rather, it is only when the municipality itself commits the misdeed that it can be held liable under §1983. *Id*. Therefore, the City of Cleveland can only be liable to Plaintiff under *Monell* if the injuries were caused by the "execution of a government's policy or custom...said to represent official policy." *Id*. at 694. The Plaintiff has the burden of proving the existence of an unconstitutional policy and to demonstrate a causal link between the policy and the alleged injuries at issue. *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003)(citations omitted). To meet this burden, the Plaintiff must show that the official policy or custom was a "moving force behind the constitutional violation." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)(citations omitted).

In this case, the Plaintiff has not presented the requisite evidence to support a finding of *Monell* liability against the City of Cleveland.

Plaintiff presents no evidence to support the elements necessary to show that an illegal official policy or custom existed at the time of Plaintiff's arrest. Rather, Plaintiff asks this Court to adopt the results of a recent investigation conducted by the Department of Justice ("DOJ") into the Cleveland Police Department practices as evidence to support his *Monell* claim in this matter. (*See* ECF #33). Plaintiff provides no legal support for such argument, and does not convince this Court that these DOJ findings apply to the case before this Court.

This Court is well-aware of the 2013 DOJ investigation, the DOJ report issued in December of 2014 and the Consent Decree entered into by the DOJ and City shortly thereafter. (ECF #36-1). This Court will not address the entirety of the 105-page Consent Decree, as it has no bearing on liability in this matter. This is true because Consent Decrees are essentially contracts entered into by the parties to outline prospective, or future, provisions. *See Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983). The Consent Decree in this case discusses, in pertinent part, future policies, procedures and monitoring, but also makes clear that the City is not admitting to any findings of prior illegal or improper conduct:

> The City agrees that DOJ's findings raise issues of importance to the City and the community that should be addressed...In agreeing to address these important issues, the City is not agreeing with the findings. (ECF #36-1, ¶5)
> .........
>
> This Agreement will not be construed as an admission or evidence of liability under any federal, State, or municipal law including 42 U.S.C. §1983. Nor is the City's entry into this Agreement an admission by the City, CDP, or is officers and employees that they have engaged in any unconstitutional, illegal, or otherwise improper activities or conduct... (Id. at ¶11).

Finally, the Parties to this Consent Decree indicate that it was not intended to be used by others as evidence:

> This Agreement is enforceable only by the Parties. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action. Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement." (Id. at ¶403.)

Plaintiff's reliance on the language within the Consent Decree as evidence of *Monell* liability against the City of Cleveland is clearly misplaced and unpersuasive. Furthermore, Plaintiff has not identified deficiencies in any of the many policies, procedures, mandates, training or supervisory methods of the City's police force. Without such evidence, Plaintiff has not met his burden of proving the existence of an unconstitutional policy and has not demonstrated a causal link between the policy and the alleged injuries at issue. *Cherrington, supra.*

Plaintiff's only specific argument for a finding of *Monell* liability is the claim that the City of Cleveland did not investigate the post-arrest "Use of Force Complaint" filed by Plaintiff and thereby ratified Officer Tankersley's conduct. (ECF #33, p. 14).[10] It is true that a municipality's failure to investigate and punish meaningfully allegations of unconstitutional conduct can be considered ratification of its employees conduct. *See Burgess, supra.* However, to prevail on the ratification theory, a plaintiff is required to show that "a final municipal policymaker approved an investigation...so inadequate as to constitute a ratification of the ... alleged constitutional

---

[10] Plaintiff does not set forth any evidence or argument to support the other potential *Monell* claims set forth in the Amended Complaint.

violation." *Rush v. City of Mansfield*, 771 F.Supp.2d 827, 861-62 (N.D. Ohio 2011)(citations omitted).

In this case, Plaintiff's have failed to present evidence indicating the involvement of a final policymaker in the investigation of Plaintiff's Use of Force Complaint. Therefore, without identifying the "final policymaker," it is nearly impossible to determine whether the underlying investigation was meaningful. *See Rush, supra*, at 862. In fact, Plaintiff argues that the City of Cleveland <u>never</u> investigated the Complaint - which is curious considering that Plaintiff attached a document to his Opposition Brief issued by the Cleveland Police Department entitled "Review of Investigation #12-215 (Jovan Warren)." (ECF #33-7). This document indicates that an investigation was conducted but would be withdrawn because it was determined that "Officer Tankersley has since retired from the Cleveland Division of Police." (*Id.*) The Department no longer had jurisdiction over Officer Tankersley, and clearly could not punish him "meaningfully" at this point, and closed the investigation. *See, e.g., Hunt v. City of Toledo Law Department, 881 F.Supp.2d 854 (N.D. Ohio 2012)*. Regardless, Plaintiff's argument that "the City of Cleveland never conducted *any* investigation into [Plaintiff's] arrest..."[11] is incorrect and Plaintiff has not met his burden of proving *Monell* liability against the City of Cleveland on these grounds.

For these reasons, this Court grants summary judgment in favor of the City of Cleveland on Plaintiff's *Monell* liability claims.

B. Officers Carraway's and Tankersely's Motions for Summary Judgment

Plaintiff alleges False Arrest (Second Cause of Action) in violation of §1983 and state claims of Negligence (Fourth Cause of Action) against both Officer Tankersely and Officer

---

[11] (ECF #33, p. 15).

Carraway. Defendants argue that they are entitled to qualified immunity and should be granted judgment as a matter of law on these claims.

1. False Arrest

A plaintiff alleging a violation of the Fourth Amendment for false arrest without probable cause may seek recourse under §1983. In order for such claim to succeed, a plaintiff must prove that the police lacked probable cause. *Keyes v. Ervin*, 92 Fed.Appx. 232 (6th Cir. 2004). Probable cause exists where there are "facts and circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir.2003) (citations omitted). Probable cause requires only the probability of criminal activity not some type of "prima facie" showing. *Id.* The probability of criminal activity is assessed under a reasonableness standard based upon "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Id.* Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In the §1983 context, the question of whether probable cause exists is left for the jury, unless there is only one reasonable determination possible. *Keyes, supra,* at 236. In such cases, this Circuit has held that "the key consideration, and one that must be done on a case-by-case basis, is not whether more than one conclusion is *possible,* but whether more than one conclusion is *reasonably* possible." *Id.* Therefore, if reasonable minds would not differ as to whether Officer Tankersley and Officer Carraway had probably cause to arrest Plaintiff, they are entitled to judgment as a matter of law.

It is clear that there are no factual discrepancies or issues relating to whether Officer Tankersley and Officer Carraway had probable cause to arrest Plaintiff on May 9, 2012.[12] Plaintiff himself submits to this Court that "[t]his case does not involve such divergent versions of material fact that summary judgment is inappropriate." (ECF #31, p. 2). The undisputed facts, as presented by Plaintiff and outlined herein, indicate that Officer Tankersley and Officer Carraway stopped Plaintiff because he fit the description of an armed robbery suspect in the area. Plaintiff admits that after a brief detention, he was allowed to leave the scene, having never been handcuffed. Plaintiff refused to leave, and began repeatedly asking for Officer Tankersley's badge number. Plaintiff has stated to this Court that when Officer Tankersley refused, "I kept insisting he give it to me."(ECF#31-3, ¶3). Plaintiff admits Officer Tankersley "didn't have to give Warren his badge number." (ECF #31, p. 9). Plaintiff refused to leave the scene despite having been released by Officer Tankersley, which led to Plaintiff's arrest for Disorderly Conduct.

Based upon these facts, reasonable minds can come to but one conclusion- Officer Tankersley and Officer Carraway had probable cause for Plaintiff's arrest. Plaintiff fails to suggest another interpretation of the facts that would support a different conclusion regarding probable cause. This finding does not change merely because Plaintiff submits in briefing that he "did not break any law." (ECF #31-3). Moreover, the fact that the charges against Plaintiff were ultimately dismissed is irrelevant when determining the validity of the arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

---

[12] This discussion has no bearing on Plaintiff's allegation of excessive force against Officer Tankersley.

Arresting officers are entitled to qualified immunity where a reasonable officer could have believed there was probable cause for for such arrest. *See, Wrubel v. Bouchard*, 65 Fed. Appx. 933, 937 (6th Cir. 2003). For the reasons set forth herein, this Court finds that both Officer Tankersley and Officer Carraway had probable cause to arrest Plaintiff, and thereby summary judgment is granted on their behalf as to the Second Cause of Action.

2. Negligence

Plaintiff's negligence claim, the Fourth Cause of Action, states:

> "Defendants Tankersely and Carraway acted in a negligent manner such that [Plaintiff] sustained injury, damages and economic and non-economic losses. Their conduct is not subject to the defense of immunity, set forth in Ohio Revised Code §2744.01 et seq., based on the fact that they acted in a willful, wanton, and reckless manner." (ECF #16, ¶39).

This Court finds that Plaintiff cannot maintain this negligence cause of action as it is internally inconsistent. Despite being captioned "Negligence," Count Four clearly alleges conduct that is greater than negligence.

When evaluating claims under Revised Code Chapter 2744, the Ohio Political Subdivision Tort Liability Act, relevant terms have been defined as follows:

> -willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury;
>
> -wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result;
>
> - reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.
> O.R.C. §2744.03(A)(6)(b). *See also Anderson v. Massillon*, 134 Ohio St.3d 380,

389 (2012).

Clearly, Plaintiff is not alleging mere negligence against Defendants - not within the Complaint nor within his Affidavit filed as an Exhibit to a Brief in Opposition. (ECF #31-3). For these reasons, Plaintiff cannot maintain his negligence claim against Officer Tankersley or Officer Carraway, and summary judgment is granted in their favor on the Fourth Cause of Action. *See Bowman v. Jones*, No. 1:13CV1367, 2015 WL 1040114, at *7-8 (N.D. Ohio March 10, 2015)(finding the identical language in a complaint internally inconsistent and deficient to maintain a negligence claim when seeking summary judgment against police officers).

3.  Claim Against Officer Carraway

Plaintiff states in the "Facts" portion of the Amended Complaint that Officer Carraway "took no steps to intercede" when she "observed [Plaintiff's] constitutional rights being violated...despite having the duty and opportunity to do so." (ECF #16, ¶15). Despite this questionable form of pleading, this Court will infer from subsequent pleadings that Plaintiff is asserting a "failure to intervene" claim against Officer Carraway. (See ECF #31, p. 16).

It has been established in this Circuit that "[a]s a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Furthermore, an officer may only be held liable under a failure to intervene theory where she both: (1) observed or had reason to know that excessive force would be or was being used; and (2) had both the opportunity and the means to prevent the harm from occurring. *Amerson v. Waterford Tp.*, 562 Fed.Appx. 484 (6th Cir. 2014)(citing *Turner v. Scott*, 115 F.3d 425 (6th Cir. 1997).

Plaintiff has presented no evidence that Officer Carraway had any knowledge that unlawful force was being used during the arrest. Similarly, there is no evidence to show that Officer Carraway had the "ability to implement an intervention strategy" to prevent the alleged injury to Plaintiff. *Turner, supra*, (finding that police officer who stood nearby while another officer punched and kicked arrestee in the head was not liable for excessive force claim brought under §1983). At most, Plaintiff alleges he had a brief conversation with Officer Carraway while Plaintiff was seated, uncuffed, in the police vehicle the first time. (ECF #27, p. 97). Plaintiff has presented no set of facts that prove that Officer Carraway had the knowledge of - or the ability to prevent - an unlawful arrest.

Plaintiff argues that the fact that Officer Carraway wrote the citation "rather than prevent the false arrest" is somehow sufficient to prove liability. (ECF #31, p. 17). That is simply not the case. Plaintiff has presented no legal basis or factual scenario that would allow this Court to find that because Officer Carraway wrote and signed the citation, she is liable to Plaintiff under a failure to intervene theory. This Court's duty to view the facts in the light most favorable to the non-movant does not require or permit the Court to accept mere allegations that are not supported by factual evidence. *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009)(citations omitted). Therefore, this Court finds that Officer Carraway is entitled to judgment as a matter of law as to the claim of failure to intervene.

4.     Claims Against Officer Tankersley

Officer Tankersley moves for a partial summary judgment as it relates to the excessive force claim (First Cause of Action) and for summary judgment relating to Plaintiff's First Amendment Retaliation Claims (Seventh Cause of Action).

Plaintiff alleges that Officer Tankersley's actions during the arrest of May 9, 2012 "constitute an unjustifiable and excessive use of force without legal justification" that violated Plaintiff's civil rights under the Fourth and Fourteenth Amendment and under §1983. (ECF #16, ¶29.) Plaintiff also alleges that Officer Tankersley's actions caused him "serious and permanent injuries and extreme emotional distress." (Id. at ¶32). In response, Officer Tankersley argues that he is entitled to qualified immunity because he used "reasonable force" and did not violate Plaintiff's constitutional rights. (ECF #28, pp. 6-14).

It is clear that all claims that a law enforcement officer has used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Burgess, supra*, at 473 (*citing Graham v. Connor*, 490 U.S. 386, 392 (1989). In determining whether an officer's use of force was reasonable, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Martin v. City of Broadview Heights*, 712 F.3d 951 (6th Cir. 2013)(*citing Graham, supra*). Three factors guide this balancing: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

As it relates to this case, Plaintiff alleges that Officer Tankersley used excessive force when he allegedly grabbed his collar and punched him, pushed on Plaintiff's right shoulder and forced his arm down his back, and when he placed handcuffs on Plaintiff. These are factual issues that are material to the reasonableness inquiry surrounding Officer Tankersley's use of force that preclude summary judgment in this matter. *See Miller v. Sanilac County*, 606 F.3d 240, 253 (6th Cir. 2010)(citing Sixth Circuit cases where genuine issues of material fact were found to exist in

similar cases of alleged excessive force during an arrest). Whether Officer Tankersley was justified in using the degree of force alleged to effectuate the arrest of Plaintiff has simply not been borne out by the evidence in this matter and remains a question for a jury. Because a question of whether Officer Tankersley's actions were objectively reasonable still exists, summary judgment is also improper as to whether qualified immunity applies. *See, e.g., Kirk v. Bostock*, No. 09-15018, 2011 WL 52733, *2 (E.D. Mich. Jan. 7, 2012).

This Court does not express any view as to the ultimate merits of Plaintiff's excessive force claim but merely holds that factual questions exist that preclude this Court from issuing summary judgment in Officer Tankersley's favor. Therefore, Plaintiff's excessive force claim (First Cause of Action) remains viable and Tankersley's Partial Motion for Summary Judgment on this count is denied.

The remaining claim against Officer Tankersley, First Amendment Retaliation (Seventh Cause of Action), alleges that Plaintiff was engaged in "protected speech" when he asked Officer Tankersley for his badge number and that Officer Tankersley took retaliatory action that resulted in Plaintiff's injuries. (ECF #16, ¶50). Plaintiff presents no legal argument to support the claim that Plaintiff was engaged in protected speech at the time of the arrest, and therefore, cannot prove a prima facie case of First Amendment retaliation.[13] Similarly, Plaintiff presents no factual basis to support this claim. Rather, Plaintiff attempts to convert Plaintiff's deposition testimony into actual statements made by Officer Tankersley at the scene of the arrest. (See ECF #31, p. 18). These statements, even if they were uttered by Officer Tankersley, do not begin to constitute evidence to prove the necessary elements of a First Amendment retaliation claim.

---

[13] *See Wenk v. O'Reilly*, 783 F.3d 585 (6th Cir. 2015).

Plaintiff's retaliation claim is nothing more than a repackaging of the false arrest claim, and it has already been determined that probable cause existed for that arrest. *See, Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012). There is no genuine issue of material fact relating to this claim, and therefore, Plaintiff's Seventh Cause of Action fails and Officer Tankersley is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth herein, this Court GRANTS summary judgment in favor of The City of Cleveland on the Second, Fifth and Sixth Causes of Action; and GRANTS summary judgment in favor of Officer Carraway on the Second, Fourth and Sixth Causes of Action. All claims against these two Defendants have been adjudicated.

This Court GRANTS summary judgment in favor of Officer Tankersley on the Second, Third, Fourth, Sixth and Seventh Causes of Action, but DENIES summary judgment on the First Cause of Action. Therefore, the Excessive Force claim against Officer Tankersley remains.

The Stipulated Motion to Refer the Case to Magistrate Judge for Mediation and for Continuance of Trial Date is DENIED and the Trial date remains October 7, 2015 as scheduled.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: September 21, 2015